No. 28,962.

E. L. OVERTON, doing business as The E. L. Overton Electric Company, *Appellant*, v. GEORGE O. CORLETT and A. C. WELCHONS, doing business as Corlett & Welchons, J. Q. ADAMS, doing business as The Dodge City Electric Company, and THE FEDERAL SURETY COMPANY OF DAVENPORT, IOWA, *Appellees.*

(282 Pac. 713.)

Opinion filed December 7, 1929.

*Eugene S. Quinton,* of Topeka, for the appellant.

*Ralph T. O'Neil, J. D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover the sum of $301.15 for electric fixtures installed in a school building in Montezuma.

The controlling facts were these: In 1925 the school board of district No. 4, Gray county, set about the construction of a new schoolhouse at Montezuma. To that end they let two or more contracts to different parties, the precise number not shown. One of these contracts, designated as the general contract, was awarded to the defendants, Corlett & Welchons, who undertook to erect the building and supply all the labor and material therefor according to the specifications, but it was expressly stipulated that this "general contract" did not include plumbing, heating and electric wiring.

The specifications provided that the general contractor should notify the other contractors of the progress of the building so that the latter could arrange to execute their part of the work at the proper time. They also provided:

"'Contractor' will mean the person or persons who will contract with the owner for the work and material herein specified.

. . . . . . . . . . . . . . .

"Each contractor to whom each contract is awarded will be required to give the owner two bonds (a performance bond and a statutory bond) as described below, and both must meet the approval of the owner and architects."

By the specific terms of defendants' contract it was stipulated—

"Article 4. The contractor and the owner agree that the general conditions of the contract, the specifications and the drawings, together with this agreement, form the contract, and that they are as fully a part of the contract as if hereto attached or herein repeated; and that the following is an exact enumeration of the specifications and drawings."

The statutory bond given by the defendants Corlett & Welchons as principals and the Federal Surety Company of Iowa as surety was for the full contractual sum of $49,700, and recited that defendants were the lowest bidders for the erection and completion of a rural high-school building at Montezuma and had entered into a written contract with the district board for the performance and completion of said work and for improvement according to certain plans and specifications on file with the clerk of the board. The condition and obligation of the bond read:

"Now, therefore, if the said Corlett & Welchons, principal, shall well and truly pay for the work of all laborers, subcontractors, teamsters, teams, and wagons employed on said work, and for all material used therein, then this obligation shall be void. Otherwise, this obligation shall remain in full force and effect."

It is not shown who were the other contractors contemplated by the specifications quoted above to whom were let the contracts for those parts of the work excluded from the contract awarded to Corlett & Welchons—the plumbing, heating and electric wiring—but apparently the contract for the electric wiring was let to John Q. Adams, doing business as Dodge City Electric Company. The plaintiff furnished Adams certain electric supplies which went into the Montezuma school building, and on January 21, 1926, it rendered to him as the Dodge City Electric Co. an itemized bill therefor aggregating $301.15, and on his default of payment therefor plaintiff brought this action to recover on the statutory bond given

by Corlett & Welchons to protect materialmen as required by R. S. 60-1413, as amended by chapter 198 of the Laws of 1925.

The pertinent facts were developed by the pleadings and statements by counsel for the litigants. These disclosed that before furnishing the electric supplies ordered by Adams as the Dodge City Electric Company, the plaintiff inquired of the clerk of the school board if there was any statutory bond filed for the protection of materialmen and received an affirmative answer. It was also agreed by counsel that the only bond filed as required by law was the one given by Corlett & Welchons.

The trial court gave judgment for defendants, and plaintiff appeals.

To determine the correctness of the trial court's judgment it is necessary to keep in mind the important fact that the contract awarded to Corlett & Welchons expressly excluded from the work they engaged to perform the plumbing, heating and electric wiring. Corlett & Welchons bound themselves to do all the other work, and to pay for all the materials and labor which entered into the work they had undertaken. If they sublet any part of the work they themselves had contracted to do, their statutory bond made them responsible for the pertinent obligations of any such subcontractor. The theory of materialmen's liens and labor liens is so well understood that it would be superfluous to expound it at length here. Its underlying idea is that when a contractor undertakes to construct a public improvement, it is his duty to see to it that all workmen and materialmen who contribute to the success of his undertaking are paid. (40 C. J. 44-46; 18 R. C. L. 872; Bloom's Law of Mechanics' Liens, 6 et seq.) When that is done, the contractor pockets the remainder of the contract price as his own, whatever it may be. To insure the discharge of that duty where the undertaking is the construction of a public improvement the statute requires the giving of a bond by the contractor. But that bond only pertains to the payment of the labor and materials which contribute to the work or improvement the contractor has undertaken—not the work or part of the work or part of the improvement not expressly undertaken by the contractor. Here the specifications contemplated that the plumbing, heating and electric wiring would be the subject matter of one or more contracts with parties engaged in those particular lines of work, and that statutory lien bonds would be exacted as an incident thereto. That this detail was not properly attended to is no concern of these defendants. No part of the materials furnished by

plaintiff went into that part of the work the defendants had contracted to perform. There is no tangible ground on which defendants' bond can be subjected to the payment of plaintiff's bill.

The judgment is affirmed.